# No. 24-1412

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

AL INFINITY LLC,

*Plaintiff-Appellant,*

v.

HERSCHEL SPALTER, ISSER BOYARSKY, DOES 1-10,

*Defendants-Appellees,*

CROWN CELL INC.,

*Defendant-Third-Party Plaintiff-Appellee,*

WESTVIEW INDUSTRIES, INC.,

*Third-Party Defendant.*

Appeal from the United States District Court for the Southern District of New York, No. 1:20-cv-04813-NRB, Judge Naomi Reice Buchwald

### BRIEF FOR DEFENDANTS-APPELLEES CROWN CELL, INC., HERSCHEL SPALTER, AND ISSER BOYARSKY

Coby S. Nixon
BUCHALTER APC
3350 Riverwood Parkway, Ste. 1900
Atlanta, Georgia 30339
(404) 832-7533

*Counsel for Defendants-Appellees*

December 2, 2024

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Defendant-Third-Party Plaintiff-Appellee Crown Cell Inc. certifies that it has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page(s)**

STATEMENT OF THE ISSUES..................................................................1

INTRODUCTION ......................................................................................2

STATEMENT OF THE CASE ...................................................................3

I.     FACTUAL BACKGROUND.................................................................3

        A.     The Parties and Relevant Non-Parties.....................................3

        B.     Crown Cell Purchases the Products, Relying on Its Prior Relationship with Westview..................................................4

        C.     Crown Cell Receives the Products from Fenda. ....................5

        D.     Crown Cell Sells the Products Online.....................................6

        E.     Crown Cell Responds to Infinity's Demand Letter by Explaining that the Products Are Authorized. .......................6

II.     PROCEDURAL HISTORY ...............................................................7

        A.     Crown Cell Responds to Infinity's Complaint by Explaining that the Products are Authorized. ................................7

        B.     The District Court Orders Infinity to Produce Documents and Agreements Concerning Fenda. ......................8

        C.     Westview Produces an Agreement with Infinity's Predecessor. ........12

        D.     The District Court Gives Infinity Another Opportunity to Produce Documents and Information Concerning Fenda. ...........12

        E.     The District Court Enters Summary Judgment for Crown Cell on Infinity's Counterfeiting Claim. .......................14

                1.     Infinity's Reliance on a Time of Manufacture Argument. .......14

                2.     The District Court's Summary of the Procedural History. .......15

3.  The District Court's Description of the Facts and Disputed Issues. ........................................................................17

4.  The District Court's Analysis of Infinity's Counterfeiting Claim. ..............................................................................18

5.  The District Court's Analysis of Infinity's Remaining Claims. .............................................................................20

F.  The District Court Gives Infinity Yet Another Opportunity to Produce Evidence Concerning Fenda. ................................21

G.  The District Court Enters Summary Judgment for Crown Cell on Infinity's Remaining Claims. ...........................................23

1.  Infinity Attempts to Reargue the Issue of Authorization and Contends, for the First Time, that Fenda Was Never Given Permission to Sell Altec Lansing Products. ...................23

2.  The District Court Refuses to Condone Infinity's Attempt to Reargue the Factual Record. ................................24

SUMMARY OF THE ARGUMENT ......................................................25

STANDARD OF REVIEW ...................................................................28

ARGUMENT ......................................................................................29

I.  INFINITY MISUNDERSTANDS THE BURDEN OF PROOF AND RELIES ON AN IMPROPER ARGUMENT. ................................29

A.  The District Court Correctly Placed the Burden of Proof on Infinity to Show that the Products Were Not Authorized. ...................29

B.  Infinity's Lack of Authorization Argument Is Not Properly Before this Court. ...............................................................31

II.  THE COURT SHOULD AFFIRM THE DISTRICT COURT'S SUMMARY JUDGMENT RULINGS. ......................................35

A.  The District Court Correctly Concluded that Infinity Failed to Present Evidence that the Products Were Not Authorized. ...............35

B.    The District Court Correctly Concluded, in the Alternative, that Crown Cell Put Forth Sufficient Evidence to Support Summary Judgment. ........................................................................................40

C.    Infinity's Remaining Arguments Provide No Reason to Disturb the District Court's Rulings.................................................................44

CONCLUSION ...........................................................................................53

CERTIFICATE OF COMPLIANCE ........................................................54

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*4 Pillar Dynasty LLC v. N.Y. & Co.*,
   933 F.3d 202 (2d Cir. 2019) ..................................................................52

*1-800 Contacts, Inc. v. WhenU.com, Inc.*,
   414 F.3d 400 (2d Cir. 2005) ..................................................................30

*Bel Canto Design, Ltd. v. MSS HiFi, Inc.*,
   837 F. Supp. 2d 208 (S.D.N.Y. 2011) ..................................................47

*Best Brands Consumer Prods. v. Versace 19.69 Abbigliamento
   Sportivo S.R.L.*,
   No. 23-cv-1115, 2024 U.S. App. LEXIS 14251 (2d Cir. June 12,
   2024) (unpublished) ..............................................................................34

*By Design PLC v. Ben Elias Indus. Corp.*,
   No. 98-cv-4588, 1998 U.S. Dist. LEXIS 22992 (S.D.N.Y. Oct. 2,
   1998) ................................................................................................48, 49

*Chandok v. Klessig*,
   632 F.3d 803 (2d Cir. 2011) ..................................................................40

*Citizens Bank of Clearwater v. Hunt*,
   927 F.2d 707 (2d Cir. 1991) ..................................................................28

*Crawford v. Franklin Credit Mgmt.*,
   758 F.3d 473 (2d Cir. 2014) ..................................................................40

*El-Nahal v. Yassky*,
   835 F.3d 248 (2d Cir. 2016) ..................................................................28

*Goenaga v. March of Dimes Birth Defects Found.*,
   51 F.3d 14 (2d Cir. 1995) ......................................................................28

*Golden Ins. Co. v. Ingrid House LLC*,
   No. 21-cv-1337, 2022 U.S. App. LEXIS 16343 (2d Cir. June 14,
   2022) (unpublished) ..............................................................................35

*Gorbea v. Verizon N.Y. Inc.*,
  No. 20-3486, 2021 U.S. App. LEXIS 31272 (2d Cir. Oct. 19,
  2021) (unpublished).................................................................................30

*Gurvey v. Cowan, Liebowitz & Latman, P.C.*,
  462 F. App'x 26 (2d Cir. 2012) (unpublished).............................35, 37

*Havey v. Homebound Mortg., Inc.*,
  547 F.3d 158 (2d Cir. 2008) ..............................................................28

*Hollander v. Am. Cyanamid Co.*,
  172 F.3d 192 (2d Cir. 1999) ..............................................................39

*ICEE Distributors, Inc. v. J&J Snack Foods Corp.*,
  325 F.3d 586 (5th Cir. 2003) .............................................................38

*Estate of Landers v. Leavitt*,
  545 F.3d 98 (2d Cir. 2008) ................................................................29

*Mallek v. Allstate Ins. Co.*,
  No. 22-cv-86, 2023 U.S. App. LEXIS 12203 (2d Cir. May 18,
  2023) (unpublished)...........................................................................34

*Nat'l Union Fire Ins. Co. v. Stroh Cos.*,
  265 F.3d 97 (2d Cir. 2001) ................................................................34

*Shumway v. UPS*,
  118 F.3d 60 (2d Cir. 1997) ................................................................30

*Time, Inc. v. Petersen Publ'g Co.*,
  173 F.3d 113 (2d Cir. 1999) ..............................................................30

*Tripathy v. McKoy*,
  103 F.4th 106 (2d Cir. 2024) .............................................................47

**Federal Statutes**

15 U.S.C. § 1114(1) ...................................................................................30

15 U.S.C. § 1117(c) .....................................................................................8

**State Statutes**

N.Y. Gen. Bus. L. § 133 ...................................................................47

N.Y. Gen. Bus. L. § 360-1 .........................................................21, 47

**Rules**

Fed. R. Evid. 804 ...........................................................................39

S.D. N.Y. Local Rule 56.1 ....................................................*passim*

Fed. R. Civ. P. 56(e)........................................................................39

## STATEMENT OF THE ISSUES

1.    Whether the district court properly granted summary judgment for Appellee Crown Cell Inc. ("Crown Cell") on Appellant AL Infinity LLC's ("Infinity's") counterfeiting, trademark infringement, and other claims where (a) the district court properly placed the burden of proof on Infinity regarding its prima facie case, repeatedly reminded Infinity of that burden, gave Infinity multiple opportunities to come forward with evidence sufficient to meet its burden, and concluded that even when drawing all reasonable inferences in Infinity's favor, Infinity produced no evidence that the products at issue were not authorized, i.e., that use of the Altec Lansing trademarks was without consent, an essential element of all Infinity's claims; and (b) as a wholly separate and independent basis for its decisions, the district court reviewed Crown Cell's evidence, determined there was affirmative evidence that Infinity's predecessors had agreements with the manufacturer and distributor of the products at issue revealing that, at least at one point, the manufacturer and distributor were authorized to make or sell the products at issue, noted that there is no evidence as to whether or when that authorization was terminated, and concluded that Infinity could not establish a genuine issue of material fact as to its claims?

## INTRODUCTION

This appeal is straightforward. After focusing the parties on "the sole issue in the case" and providing Infinity with numerous chances to produce relevant evidence, the district court issued two well-reasoned and detailed orders correctly concluding that Infinity could not establish a genuine issue of material fact as to its claims. Specifically, the district court correctly determined that Infinity failed to present any evidence that the products at issue were not authorized, an essential element of Infinity's claims. The district court also correctly determined, as an independent basis for its decisions, that Crown Cell presented affirmative evidence supporting summary judgment in its favor.

Despite asking the district court to award it $4,000,000 in statutory damages (an enhancement of over *200 times* any actual damages), Infinity could not be bothered to comply with the district court's summary judgment rules or engage with the record evidence and chose to burden Crown Cell and the court with a perfunctory cross motion (proffering just *fourteen* paragraphs of purported facts to support its motion for summary judgment on five causes of action) in an attempt to distract from its untenable claims. Infinity's Appellant's Brief is likewise replete throughout with assertions that purport to state matters of fact but include no citation to any supporting evidence. Nothing in Infinity's appeal warrants disturbing the district court's decisions.

This Court should affirm the district court's summary judgment rulings.

## STATEMENT OF THE CASE

### I. FACTUAL BACKGROUND

#### A. The Parties and Relevant Non-Parties.

Appellant Infinity asserts that it is the owner of the brand "Altec Lansing," which it acquired in 2012. (A300 ¶¶2-3.)[1] The "Altec Lansing" trademarks were previously owned (i) from 2009 to 2012 by Altec Lansing, LLC, (ii) from 2006 to 2009 by Plantronics, Inc., and (iii) at all relevant times prior to 2006 by Altec Lansing Technologies, Inc. (A84-A86.)

Appellee Crown Cell is a privately held business that operates online marketplaces, including on Amazon.com, where it sells a variety of products to consumers located throughout the world. (SA-7 ¶1.)[2] Appellee Spalter is an individual residing in Florida and has been employed by Crown Cell since the company's founding in January 2014. (A23 at 4:15-18; A24 at 12:10-13.) Appellee

---

[1] Crown Cell's citations herein use "A__" when referring to the Appendices, Volumes I and II (Dkt. Entries 39.1, 39.2, and 40.1) and "SPA__" when referring to the Special Appendix (Dkt. Entry 41.1).

[2] Pursuant to Local Rule 30.1(g), because Infinity did not provide Crown Cell with an opportunity to review a proposed Appendix or designate additional parts of the record to include in the Appendix, Crown Cell is filing a Supplemental Appendix with this Appellee Brief. Crown Cell's citations herein use "SA-__" when referring to the Supplemental Appendix.

Boyarsky is an individual residing in New York and has been employed by Crown Cell since 2016. (A42 at 4:8-11; A44 at 18:4-11.)

Third-Party Defendant Westview Industries, Inc. ("Westview") is a domestic corporation that serves as a manufacturer's representative for the sale of electronic equipment. (SA-16 ¶2.)

Non-Party ShenZhen Baoan Fenda Industrial Co., Ltd. ("Fenda"), is a product manufacturer located in China. (A102-A104; A109; A114.)

Non-Party Windsor Distributors, Inc. ("Windsor") is a product reseller and Boyarsky's former employer. (A45-A46 at 13:15-14:15.) Boyarsky was employed by Windsor from 2011 until 2016. (A43 at 9:16-10:2; A44 at 12:22-24.) During that time, Westview sold products bearing the Altec Lansing brand to Windsor, which Windsor resold online. (A47-A48 at 18:24-19:9; A49 at 24:18-22; A60-A61 at 64:11-65:22.)

### B. Crown Cell Purchases the Products, Relying on Its Prior Relationship with Westview.

After Boyarsky left Windsor to join Crown Cell in early 2016, Boyarsky continued to work with Westview through Westview's principal and owner, Allen Steinberg. (A48 at 19:4-12; A49 at 24:6-10; A56 at 41:5-11.) Starting in March 2016, Boyarsky exchanged emails with Steinberg in which Westview identified certain Altec Lansing computer speakers that were available for purchase and resale. (A136-A143; A70 at 85:9-19.) Between March 2016 and January 2017, Westview

4

sold Crown Cell a total of 10,456 units of the Altec Lansing products at issue in this case, which were comprised of two speaker models, VS4621 and BXR1220 (the "Products"). (A133-A134; A217-A237; A54-A55 at 35:24-36:24; A66-A67 at 80:8-81:9; A68 at 82:8-83:16; A26-A27 at 32:22-33:6.)

### C.     Crown Cell Receives the Products from Fenda.

The Products were shipped to Crown Cell directly from Fenda. (A164-A165; A75-A76 at 124:21-125:19, A29-A30 at 36:12-37:2.) As reproduced below, the commercial invoice and packing list for Fenda's shipment were signed by an authorized representative of "Shenzhen Baoan Fenda Industrial Co., Ltd.":



(A164.)

(A165.)

Unlike newer model, wireless or Bluetooth speakers, the Products were wired desktop speaker systems – models that, as of 2016, had been available for sale for at least seven years. *See* A200-A210 at A204 (identifying April 21, 2009, as date BXR1220 product was first available); A242-A251 at A245 (same); A253-A261 at

A256 (identifying June 1, 2009, as date VS4621 product was first available). Photos taken by Spalter of samples in Crown Cell's inventory show that the Products included the following copyright notices "©2012 Altec Lansing, LLC," "©2010 Altec Lansing, LLC," and "©2008-2010 Altec Lansing, LLC". (A212-A214; A79-81 at 129:12-131:3; A34 at 72:12-24; A35 at 73:17-22.)

**D.    Crown Cell Sells the Products Online.**

In late 2016 or early 2017, Crown Cell began offering the Products for sale on its online marketplaces on Amazon.com and Walmart.com. (A58-A59 at 55:5-56:23; A33 at 47:11-16.) Of the 10,456 units it purchased, Crown Cell sold a total of 6,705 (about two-thirds) of the Products to end customers. (A215; A77-A78 at 127:20-128:19.) Crown Cell earned a net profit of $18,294 for the products it sold; notably, this amount does not take into account the storage fees and other costs associated with the additional products (about one-third) Crown Cell purchased from Westview but did not sell. (A215; A77-A78 at 127:20-128:19.)

**E.    Crown Cell Responds to Infinity's Demand Letter by Explaining that the Products Are Authorized.**

On May 4, 2017, Infinity sent a demand letter to Crown Cell alleging that Crown Cell's sales of the Products constituted trademark infringement. (A166-A167.) One day later, on May 5, 2017, Crown Cell responded to Infinity via email stating "[p]lease be advised that we have purchased Altec Lansing speakers from Allen Steinberg at West-view industries he has a very close relationship with the

infinity group and we have forwarded this to him. He assured us he will reach out the the [sic] infinity group and will resolve any issues. . . . For time being we have removed our listings from Walmart.com." (A169; A63 at 67:7-12.) As an act of good faith, Crown Cell ceased selling and offering for sale the Products promptly after receiving Infinity's letter. (A50 at 27:5-11; A25-A26 at 31:17-32:14.) Crown Cell ultimately destroyed its remaining inventory of the Products to avoid having to pay storage costs. (A50-A51 at 27:9-28:22; A34-A35 at 72:25-73:16.)

## II.     PROCEDURAL HISTORY

### A.     Crown Cell Responds to Infinity's Complaint by Explaining that the Products are Authorized.

On June 23, 2020, over three years after Crown Cell ceased selling the Products, Infinity filed this action against Appellees for alleged trademark infringement and, for the first time, claimed that the Products were counterfeit. (A2 at Dkt. 1.) Before answering the Complaint, Crown Cell requested a pre-motion conference with the district court to discuss Crown Cell's proposed motion to dismiss Infinity's counterfeiting claim. (SA-1 – SA-3.) Crown Cell made clear that "[t]his case does not involve counterfeiting." (SA-2.) Rather, Crown Cell explained, "this case involves allegations of traditional trademark infringement, and concerns disputes over whether [Infinity's] manufacturer had the right to distribute [Infinity's] speakers through Westview [and] whether Westview had the right sell [Infinity's] speakers to Crown Cell." (SA-1.) Crown Cell emphasized that Infinity "has added

conclusory allegations of 'spurious marks' and 'Counterfeit Merchandise' to the complaint . . . in an improper attempt to threaten enhanced, statutory damages under 15 U.S.C. § 1117(c) that are not available for traditional trademark infringement." (SA-2.)

Infinity responded by acknowledging to the district court that the Products were manufactured "*by a former distributor* of 'Altec Lansing®' goods." (SA-5.) (Emphasis added.) According to Infinity, Crown Cell's logic was flawed by assuming that "*because a former distributor of the brand was involved*, the goods must have been manufactured with authority." (*Id.*) (Emphasis added.) Infinity did not question or dispute that Fenda and Westview had, at least at one point, been authorized to make and sell Altec Lansing products.

Thereafter, Infinity filed a First Amended Complaint (A4 at Dkt. 26), Crown Cell filed its Answer (*id.* at Dkt. 27), and the parties held an initial pretrial conference with the district court (A6 at Dkt. 33, 7/7/2021 Minute Entry).

## B. The District Court Orders Infinity to Produce Documents and Agreements Concerning Fenda.

During the initial pretrial conference, the district court instructed the parties to submit a Civil Case Management and Initial Scheduling Order (the "Scheduling Order") setting forth an exchange of "initial targeted discovery to aid in assessing the strengths and weaknesses of their respective cases." (SA-25 – SA-29.) As shown in the Scheduling Order proposed by the parties and entered by the district court, the

district court directed Infinity to produce specific documents regarding Fenda's authorization to manufacture and sell Altec Lansing products. (*Id.*)

For example, the Scheduling Order required Infinity to produce "a copy of the Memorandum of Understanding entered into between [Fenda] and Altec Lansing Technologies, Inc. in or about August 2004 and all other contracts or agreements under which Fenda has manufactured or been authorized to manufacture any goods sold or intended to be sold under or in connection with any of the Asserted Marks." (SA-26.) In response, Infinity produced a "Memorandum of Understanding" executed in October 2004 between Altec Lansing Technologies, Inc., and Fenda (the "MOU") (A102-A104) and a "Vendor Managed Inventory Addendum" executed on April 1, 2009, between Plantronics, Inc., and Fenda (the "Addendum") (A106-A110).

In its Appellant's Brief, Infinity characterizes the MOU and the Addendum as being "presented" or "introduced" by Crown Cell or as "Defendants' documents" (Dkt. Entry 41.1 ("App. Br.") at 10, 15 n.1, 34)[3] and attempts to fault Crown Cell for not producing related documents referenced in these agreements (*id.* at 51). To be clear, Infinity produced the MOU and the Addendum. This is evidenced by the

_____

[3] Crown Cell's citations to the Appellant's Brief refer to the page numbers assigned in the ECF header.

lack of any Bates numbering on the MOU or Addendum, as Infinity failed to Bates stamp any of the documents it produced during discovery.[4]

Infinity also claims there is no evidence indicating that the signatory to the MOU and the Addendum was an "affiliate" of the manufacturer of the Products. (App. Br. at 49.) As reproduced below, however, the MOU and the Addendum were signed by representatives of "ShenZhen Baoan Fenda Industrial Co., Ltd.," the same entity that shipped the Products to Crown Cell as shown by the signatures reproduced above.



(A104.)



---

[4] *Compare* A102-A104 and A106-A111 (documents produced by Infinity without Bates stamps) *with, e.g.*, A133-A215 (documents produced by Crown Cell with "CROWN CELL" Bates stamps) and A217-A240 (documents produced by Westview with "WESTVIEW" Bates stamps).

10

(A109.)

The MOU and Addendum demonstrate that Infinity's predecessors authorized Fenda to manufacture Altec Lansing products. For example, the MOU provides, among other things, that "both parties wish to enter into a customer/supplier arrangement," "Altec is interested in the technology and new product concepts developed by supplier and/or partners," "Supplier [ShenZhen Baoan Fenda Industrial Co., Ltd.] agrees to offer Altec new product designs and developments within the range of Supplier's capabilities," and "[a]ll products manufactured by Supplier for Altec must be in full compliance of the mutual agreed specifications." (A102.) The Addendum amended Plantronics's "Order Terms and Conditions" that were publicly available on Plantronics's website. (A106.) The Addendum provides, among other things, that "Seller [ShenZhen Baoan Fenda Industrial Co., Ltd.] agrees to supply the Goods specified in Exhibit A (as may be updated from time to time by mutual agreement of the parties) to Altec." (*Id.*) Exhibit A referred to a "current Altec Lansing Product List" posted on an "Altec/Plantronics" internal portal. (A110.)

The Scheduling Order also ordered Infinity to produce "documents concerning any termination or expiration of Fenda's authorization or license to manufacture goods sold or intended to be sold under or in connection with any of

the Asserted Marks." (SA-27.) Infinity did not produce any documents in response to this directive.

### C.    Westview Produces an Agreement with Infinity's Predecessor.

With its Initial Disclosures, Westview produced an "Amendment to Sales Representative Agreement" dated December 1, 2009, between Westview and Plantronics, Inc. (the "Amendment"). *See* A100 (bearing a WESTVIEW Bates stamp). The Amendment refers to a "Sales Representative Agreement" dated January 1, 2003 (the "Sales Representative Agreement") and states that the "parties desire to amend the" Sales Representative Agreement. (*Id.*) The Amendment provides that, e.g., "[Westview] shall no longer be appointed to solicit orders for the Altec Lansing Products." (*Id.*) The Amendment goes on to provide, however, that "[Westview] shall continue to represent the Plantronics products on the same terms and conditions that are set forth in" the Sales Representative Agreement (*Id.*) The Amendment as produced is signed by Westview but not by Plantronics, Inc. (*Id.*) Neither Westview nor Infinity produced any additional, related agreements or documents.

### D.    The District Court Gives Infinity Another Opportunity to Produce Documents and Information Concerning Fenda.

After conducting the initial discovery set forth in the Scheduling Order, Crown Cell sought authorization to file a motion for summary judgment on Infinity's counterfeiting claim. (SA-30 – SA-31.) Infinity opposed Crown Cell's request,

claiming that it needed "continued discovery, or at least a deposition of each defendant." (SA-32.) In two different letters to the district court, Infinity contended that Fenda was not licensed to produce the Products "at the time of manufacture." *See* SA-32 and SA-35 (arguing that "there has been no irrefutable evidence presented to date to demonstrate that the goods were manufactured by a factory that was licensed to produce the goods at the time of manufacture (an early-dated copyright notice on the product would not be definitive)") (underlining in original). Once again, Infinity did not question or dispute that Fenda had, at least at one point, been authorized to make and sell Altec Lansing products.

The district court found Infinity's letters deficient for failing to "specify the discovery that is required in order to address the counterfeiting claim in the first instance." (SA-36.) "Noticeably absent," explained the district court, was "any statement of intent to depose the Chinese manufacturer of the goods in question, Fenda, despite [Infinity's] expressed willingness to do so at our conference on June 29, 2022." (*Id.*) According to the district court, the "failure to state an intent to depose Fenda is striking because of the centrality of that deposition." (*Id.*)

Infinity responded by requesting an additional 90 days "to complete document discovery, depositions, and [a] third party investigation" of Fenda, stating that it "does not intend to depose a representative of Fenda but will be attempting to secure cooperation on their part by requesting documents via email and through overseas

agents of [Infinity's] business and business affiliates." (SA-37 – SA-48 at SA-37, SA-48.) Infinity said it needed the additional discovery to evaluate Crown Cell's claim that the Products were manufactured in or before 2012, "when the factory was allegedly authorized to produce Altec Lansing® product for a licensee (not the Defendants) of Plaintiff's predecessor." (SA-37.) Yet again, Infinity did not question or dispute that Fenda and Westview had, at least at one point, been authorized to make and sell Altec Lansing products.

In view of Infinity's representations, the district court granted Infinity's request "for a 90-day period to complete discovery related to the counterfeiting claim, including two party depositions." (SA-49.)

### E. The District Court Enters Summary Judgment for Crown Cell on Infinity's Counterfeiting Claim.

After the 90-day period of additional discovery was concluded, Crown Cell renewed its request to file a motion for summary judgment on Infinity's counterfeiting claim. The court issued a memo endorsement and set a briefing schedule on Crown Cell's motion and Infinity's proposed cross-motion for summary judgment. (A8-9 at Dkt. Entries 57-59.)

### 1. Infinity's Reliance on a Time of Manufacture Argument.

In opposing Crown Cell's motion and in support of its cross-motion, Infinity asserted that the Products were "<u>manufactured when ordered</u> in 2016 and 2017, and not before." (SA-59.) (Underlining in original). Relying on this assertion, Infinity

14

claimed that Crown Cell was liable for infringement and counterfeiting "because Defendants used counterfeit marks and continued to use the marks *after its supplier's relationship with [Infinity's] predecessor long ended*." (SA-61.) (Emphasis added.) Similarly, Infinity claimed it was "immaterial that *the products may, at one point, have been authentic Altec Lansing products*." (SA-63 n.1.) Infinity also acknowledged "*that the Altec Lansing products Defendants advertised were once authenti*c," but claimed this "mere *fact*" did "not mean that they continued to be when the trademark owner, [Infinity] or its predecessor withdrew its permission." (*Id.*) (Emphasis added.)[5] Accordingly, not only did Infinity fail to dispute that Fenda and Westview had, at least at one point, been authorized to make and sell Altec Lansing products, Infinity expressly acknowledged this prior authorization as a "fact."

## 2. The District Court's Summary of the Procedural History.

On August 9, 2023, the district court issued an order – a detailed, 31-page memorandum – granting Crown Cell's motion for summary judgment on the counterfeiting claim and denying Infinity's cross-motion in its entirety. (SPA1-SPA31.) The district court began its Order by noting that "[f]rom early on in this

---

[5] *See also* SA-61 (citing case law to support argument that Crown Cell was liable because "when an ex-licensee continues to use a mark after its license expires, likelihood of confusion is established as a matter of law").

litigation, the Court and the parties have been aware of the sole issue in the case --
whether the sale by [Crown Cell] of two models of speakers bearing the Altec
Lansing trademark was legitimate or counterfeit." (SPA1.) The district court
explained that "[t]he confusion on this seemingly simple and fundamental question
arose from the fact that the speakers at issue were purchased from entities that were,
at least previously, authorized by the Altec Lansing trademark owners to produce
and distribute their products." (*Id.*) The district court emphasized that "the factual
question of whether the goods were actually counterfeit was identified at the onset,
and [Infinity] has been given several opportunities to learn the facts regarding these
goods," but explained that "[d]espite these chances and its burden, [Infinity] has
failed to do so." (SPA2.)

In summarizing the procedural history, the district court described how,
during a June 29, 2022, conference with the parties, "it explicitly addressed
[Infinity's] burden to prove that the [Products] were not authorized" and "inquired
whether [Infinity] was planning to seek discovery from Fenda." (SPA3-SPA4.) The
district court also described how it granted Infinity's request for another 90 days of
discovery after Infinity "stated it would attempt to secure some emails and
documents from Fenda." (SPA4.)

### 3. The District Court's Description of the Facts and Disputed Issues.

Before turning to the factual background, the district court addressed Infinity's "failure to adhere to Local Rule 56.1," finding that Infinity "submitted a wholly deficient Rule 56.1 statement and response." (SPA5-SPA6.) With respect to Infinity's statement of facts, the district court considered it "striking" that Infinity's statement included "just <u>fourteen</u> paragraphs to support its motion for summary judgment on five causes of action," and deemed it "simply improper" that Infinity would seek to support the bulk of its factual allegations with a declaration from its managing member Mr. Franco that "goes far beyond his own personal knowledge[,] fails to cite other evidence supporting the propositions," and relies on "emails on which Mr. Franco was not included and the deposition of another witness in the case." (SPA6-SPA7.) (Underlining in original.) Noting its discretion in fashioning a remedy for such failures, the district court stated that it "will not consider any unsupported alleged facts or assertions, and even if considered, will note the limitations of the evidence in the analysis below." (SPA7.)

The district court found that Infinity's responses to Crown Cell's Rule 56.1 statement of facts "fare no better." (*Id.*) For example, Infinity "cursorily denies many of the allegations" and, contrary to the local rule, repeatedly failed to "identify any fact in the record that refutes or challenges [Crown Cell's] assertion [or] identify the specific objection." (SPA7-SPA8.) Noting that Infinity's "deficient submissions"

17

imposed a burden on the district court "of combing through the record to assure itself that the asserted facts are supported by the admissible evidence" – a burden "Local Rule 56.1 was designed to avoid" – the district court stated that where it "relies on uncontroverted or improperly controverted paragraphs in [Crown Cell's] [Local Rule] 56.1 statements, it does so only where the record duly supports [Crown Cell's] contentions." (SPA8-SPA9.)

In providing the factual background, the district court concluded that "[c]ore to this dispute, [Infinity's] predecessors had relationships with both an affiliate of Fenda and third-party defendant Westview." (SPA9.) The district court explained that, "[f]or instance," the record included the MOU with Fenda, which stated that "both parties wish to enter a customer/supplier arrangement," the Addendum with Fenda, "in which Fenda agreed to supply certain goods to Plantronics," and the Sales Representative Agreement with Westview, under which "Westview would solicit orders for products bearing Altec Lansing Trademarks." (SPA9-SPAA10.)

### 4. The District Court's Analysis of Infinity's Counterfeiting Claim.

For its analysis, the district court first addressed Infinity's counterfeiting claim. The district court recognized that "[i]n order to prove counterfeiting, a plaintiff needs to show that the goods are not genuine, and instead contain a 'spurious mark.'" (SPA17 (citing 15 U.S.C. § 1127).) As for Infinity, the district court found that "despite the additional time to build a factual record, [Infinity] has failed to

establish the basic fact that the goods were counterfeit." (SPA18.) Addressing the time of manufacture argument Infinity pursued in its briefing, the district court found that "even if Fenda did entirely manufacture the speakers in 2016 and 2017, [Infinity] does not provide any evidence that Fenda was not permitted to do so." (SPA23.) "Here," explained the district court, "the record contains no evidence as to who was permitted to manufacture the goods or, alternatively, that the speakers were no longer authorized to be in production at that time." (*Id.*) On this basis alone, the district court concluded that Infinity's cross motion for summary judgment on the counterfeiting claim should be denied (SPA23) and that Crown Cell's motion for summary judgment on the counterfeiting claim should be granted (SPA24).

The district court nevertheless continued its analysis, finding that "[s]eparate and apart from [Infinity's] failure" to present evidence that the goods were in fact counterfeit, Crown Cell "presented affirmative evidence that [Infinity's] predecessors had agreements with both Fenda and Westview, revealing that, at least at one point, Fenda and Westview were authorized to make or sell Altec Lansing products." (SPA24.) In discussing such evidence, the district court cited the MOU and Addendum with Fenda "to supply or produce Altec Lansing goods" and noted "there is no evidence as to whether or when that arrangement was terminated." (*Id.*) The district court also cited evidence "that Fenda was listed as a top exporter of Altec Lansing products." *Id.* (citing A288 (Crown Cell's Statement of Facts) ¶17, which

was supported by A113-A118 (showing U.S. custom importation records)). The district court further cited the Sales Representative Agreement with Westview, "which allowed Westview to solicit orders for Altec Lansing goods," as well as Boyarsky's testimony "that he knew that Westview and Steinberg were at least previously authorized to sell Altec Lansing products." (SPA24-SPA25.) Finally, the district court cited Crown Cell's "evidence that the speakers at issue were not the latest model, but older models that had been available since at least 2009," concluding that the "fact that these were older models support [Crown Cell's] argument that the speakers were produced while Fenda or Westview had a license to do so." (SPA25.)

In view of this affirmative evidence, the district court held that Infinity could not establish a genuine issue of material fact as to counterfeiting. (*Id.*) Addressing the emails relied on by Infinity between Crown Cell and Westview and between Westview and Fenda in 2016 and 2017, the district court held that even when drawing all reasonable inferences in Infinity's favor, Infinity could not show "whether Fenda was permitted to produce the speakers at that time." (SPA25-SPA26.)

### 5. The District Court's Analysis of Infinity's Remaining Claims.

Turning to Infinity's motion for summary judgment on its remaining claims, the district court recognized that "[f]or [Infinity] to win on each claim, it is required

to prove that the speakers sold by [Crown Cell] were not authentic." (SPA27.) The district court then proceeded to analyze each of Infinity's causes of action and deny Infinity's motion due to its failure to prove that the Products were inauthentic. (SPA27-SPA30.)[6] Responding to Infinity's claim that "it is immaterial that the products may, at one point, have been authentic," the district court pointed out that Infinity "has presented no evidence that [Infinity] or its predecessors actually withdrew its permission from Fenda." (SPA28 n.10.)

Noting that "the predicate for [Infinity's] remaining four causes of action no longer exists," the district court advised Infinity that unless it could "refute the Court's legal logic within 14 days, the Court will enter summary judgment for [Crown Cell] on all causes of action." (SPA31.) The district court made clear, however, that "any submission from [Infinity] may not seek to reargue the Court's decision that the record fails to establish counterfeiting." (*Id.*)

### F. The District Court Gives Infinity Yet Another Opportunity to Produce Evidence Concerning Fenda.

In a letter to the district court, Infinity argued that its remaining claims should survive summary judgment. (SA-69 – SA-75.) Importantly, Infinity continued to

---

[6] The district court concluded that Infinity's anti-dilution claim was not viable for the additional reason that the only remedy available under N.Y. Gen. Bus. L. § 360-1 is injunctive relief and (ii) Infinity's unfair competition claim was not viable for the additional reason that it requires a showing of bad faith, which Infinity cannot meet. (SPA29 n.11; SPA30 n.12.)

acknowledge that Fenda and Westview had, at least at one point, been authorized to make and sell Altec Lansing products and continued to rely on its time of manufacture argument. Indeed, Infinity told the district court *"[i]t is undisputed that the goods in question were sold by a former licensee of the Altec Lansing® brand* after the expiration of the governing license agreement." (SA-69.) (Emphasis added.) *See also* SA-70 (relying on cases "[w]here an ex-licensee continues to use a mark after its license expires"); SA-73 (arguing applicability of cases "dealing with trademark infringement in the context of license agreements and legitimate merchandise").

Ruling via Letter Order, the district court said it was "not convinced that [Infinity's] point [regarding the expiration of the governing license agreement] is 'undisputed' or even supported by a factual record." (SA-76.) Specifically, the district court explained that it had concluded, in its summary judgment order, "that there were agreements between [Infinity's] predecessors and affiliates of the manufacturer of the disputed product," but it had also "explicitly noted" in the opinion that Infinity "has presented no evidence that [Infinity] or its predecessors actually withdrew its permission from Fenda." (SA-77 (citing SPA28).) "Therefore," noted the district court, "the record presented to the Court did not contain evidence that Fenda was an ex-licensee and therefore that the goods were not genuine." (*Id.*) (Underlining in original.)

Giving Infinity yet another chance to come forward with evidence to support its claims, the district court directed that "[i]f [Infinity] has evidence showing that Fenda was an ex-licensee and that the goods were not genuine, [Infinity] may file an additional brief and a compliant Local Rule 56.1 statement within 30 days." (*Id.*) The district court once again made clear, however, that "the Court's willingness to accept supplemental briefing should not be taken as an opportunity to reargue issues which have been decided." (*Id.*)

### G. The District Court Enters Summary Judgment for Crown Cell on Infinity's Remaining Claims.

#### 1. Infinity Attempts to Reargue the Issue of Authorization and Contends, for the First Time, that Fenda Was Never Given Permission to Sell Altec Lansing Products.

Rather than submit additional evidence or seek to show that Fenda was an ex-licensee per the district court's invitation, Infinity submitted a two-page supplemental memorandum and attempted to dispute, for the first time, the district court's "finding that 'there were agreements between [Infinity's] predecessors and affiliates of the manufacturer of the disputed product.'" (SA-80 (quoting the district court's letter order at SA-77).) *See also* SA-81 (arguing that "[t]here is no admissible evidence on the record to support the proposition (and very material fact) that Fenda had a license to seel [sic] Altec Lansing® product").

### 2. The District Court Refuses to Condone Infinity's Attempt to Reargue the Factual Record.

On May 1, 2024, the district court issued a 15-page Memorandum and Order finding that Infinity's effort to salvage its remaining claims "far exceeds the parameters of the Court's grant of an opportunity" to put forth "evidence showing that Fenda was an <u>ex</u>-licensee and that the goods were not genuine." (SPA34-SPA49 at SPA45 (underlining in original).) The district elaborated:

> [Infinity's] submissions make no attempt to adduce evidence that Fenda (or Westview for that matter) was an ex-licensee. Instead, [Infinity] seeks only to reargue the factual issue of whether Fenda was ever given permission to sell Altec Lansing products in the first place. This issue has already been decided, and [Infinity's] attempt to reargue it is not condoned.

(*Id.*) *See also* SPA47 (characterizing Infinity's suggestion that Fenda may have been authorized to manufacture but not sell Altec Lansing products as an argument that was "never raised before").

The district court also emphasized that its "initial finding that Fenda had a license to manufacture Altec Lansing goods was well-supported by the record." (*Id.*) *See also* SPA46 & n. 3 (summarizing record evidence and citing representations where Infinity "conceded on several occasions that Fenda was, in fact, an authorized manufacturer for at least some period of time").

Concluding that Infinity's "eleventh-hour attempts to undermine this conclusion fail" and that "even with a second bite of the apple, [Infinity] has done

nothing to disturb <u>any</u> finding -- legal or factual -- that we made in our initial Order," the district court entered summary judgment for Crown Cell on Infinity's remaining claims. (SPA47-SPA48 (underlining in original).)

## SUMMARY OF THE ARGUMENT

Throughout its brief, Infinity misunderstands and misstates the burden of proof as to the merits of its own claims. While Infinity repeatedly asserts or assumes that Crown Cell bears the burden of proving that it, Fenda, and/or Westview had the affirmative right to manufacture and sell the Products, the district court properly placed the burden of proof on Infinity to establish its counterfeiting, trademark infringement, and other claims, which includes the burden of establishing use of the Altec Lansing trademarks *without consent*. After giving Infinity multiple opportunities to come forward with evidence sufficient to meet its prima facie case, the district court correctly concluded that Infinity failed to make a showing sufficient to establish that the Products were not authorized, an essential element of all of Infinity's claims.

Infinity's main argument in this appeal, which seeks to dispute that Fenda and Westview had, at least at one point, authorization to make and sell Altec Lansing products, represents an untimely change in litigation strategy. In the district court, Infinity made the strategic decision to repeatedly and consistently claim that the Products were manufactured after its predecessors' relationships with Fenda and

25

Westview allegedly ended. Indeed, Infinity affirmatively acknowledged Fenda's and Westview's authorization in letters and briefing submitted to the district court, and failed to properly dispute this issue in response to Crown Cell's motion for summary judgment. When Infinity improperly attempted to change course and try to dispute Fenda's authorization, the district court properly refused to condone Infinity's new argument. Because this argument was never properly raised in the district court, this Court need not consider it on the merits.

Even considering Infinity's untimely argument, the district court properly determined that, despite numerous opportunities and warnings, Infinity produced no evidence that the Products were not authorized, i.e., that use of the Altec Lansing trademarks was without consent. The district court determined that "despite the additional time to build a factual record, [Infinity] has failed to establish the basic fact that the goods were counterfeit," and granted summary judgment for Crown Cell on the counterfeiting claim. The district court also proceeded to analyze each of Infinity's remaining causes of action and concluded that Infinity's failure to produce evidence that the Products were inauthentic was fatal to those claims as well. After giving Infinity yet another opportunity to present evidence, the district court determined that "even with a second bite of the apple, [Infinity] has done nothing to disturb any finding -- legal or factual -- that we made in our initial Order" and entered summary judgment for Crown Cell on Infinity's remaining claims. The district court

specifically addressed Infinity's cited evidence and was correct in holding it insufficient to meet Infinity's burden. This Court should affirm the district court's judgments on this basis alone.

As a wholly separate and independent basis for its decisions, the district court took the additional step of reviewing Crown Cell's evidence and correctly determined that such evidence supports summary judgment in Crown Cell's favor on all Infinity's claims. The district court properly considered agreements with Fenda "to supply or produce Altec Lansing goods" and noted "there is no evidence as to whether or when that arrangement was terminated." Infinity complains that these agreements are "unauthenticated" and somehow "incomplete," based on the repeated, incorrect assertion that Crown Cell, rather than Infinity, produced the agreements during discovery. Infinity also seeks to take issue with the Fenda entity that entered into the agreements, but they were both were signed by the same Fenda entity that shipped the Products to Crown Cell. The district court further correctly considered evidence of the Sales Representative Agreement with Westview, "which allowed Westview to solicit orders for Altec Lansing goods," as well as Boyarsky's testimony "that he knew that Westview and Steinberg were at least previously authorized to sell Altec Lansing products." Thus, even if Infinity's untimely lack of authorization argument is considered, the district court's consideration of Crown Cell's affirmative evidence and conclusion that Infinity could not establish a genuine

issue of material fact as to its claims provides an additional, alternative basis for affirming summary judgment to Crown Cell.

## STANDARD OF REVIEW

This Court reviews a district court's decision to grant summary judgment *de novo*. *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir. 2008). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (citations and quotations omitted).

"A party moving for summary judgment is not required to support its motion with affidavits or other similar materials *negating* the opponent's claim." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 713 (2d Cir. 1991)) (citing *Celotex*, 477 U.S. at 322-23) (emphasis in original). "[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

This Court reviews a district court's evidentiary rulings for abuse of discretion. *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008).

## ARGUMENT

I. **INFINITY MISUNDERSTANDS THE BURDEN OF PROOF AND RELIES ON AN IMPROPER ARGUMENT.**

### A. The District Court Correctly Placed the Burden of Proof on Infinity to Show that the Products Were Not Authorized.

Throughout its Appellant's Brief, Infinity misunderstands and misstates the burden of proof as to the merits of its own claims. Infinity repeatedly asserts or assumes that Crown Cell bears the burden of proving that it, Fenda, and/or Westview had the affirmative right to manufacture and sell the Products. *See, e.g.*, App. Br. at 9 (suggesting that Crown Cell "could not make a showing of consent"); 35 (contending that "lack of evidence on [Crown Cell's] part . . . should have warranted summary judgment in [Infinity's] favor"); 51 (arguing that "nothing on the record demonstrates that [the MOU] was assignable (and, in fact, assigned) or in effect nearly a decade later"); 51-52 (assuming it was Crown Cell's burden to produce additional documents concerning Fenda and Westview); 53 (contending that Crown Cell should have been required "to prove the existence of (a) a valid right to manufacture on Fenda's part and (b) a valid license to import and sell on its part"); 69 (claiming that Fenda "was never shown to have been a licensee in the first place").

To the contrary, Infinity bears the ultimate burden of proof on its counterfeiting, trademark infringement, and other claims, which includes the burden

of establishing use of the Altec Lansing trademarks *without consent*. Specifically, to set forth a prima facie case for counterfeiting and trademark infringement, "a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) *without the plaintiff's consent*." *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (emphasis added) (citation and quotation omitted); *see also* 15 U.S.C. § 1114(1) ("Any person who shall, *without the consent of the registrant*—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . .") (emphasis added); *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999) ("The Lanham Act prohibits the use in commerce, *without consent*, of any registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods, in a way that is likely to cause confusion") (emphasis added) (citation and quotation omitted).

Infinity's failure to prove lack of consent, or any other element of its claims, mandates summary judgment in Crown Cell's favor. *See, e.g., Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir. 1997) (affirming summary judgment for defendant where plaintiff "failed to allege facts sufficient to support the last element of a prima facie case"); *Gorbea v. Verizon N.Y. Inc.*, No. 20-3486, 2021 U.S. App. LEXIS 31272, at *4 (2d Cir. Oct. 19, 2021) (unpublished) (affirming summary judgment for

defendant where "[t]he district court properly found that [plaintiff] failed to establish the third element of a prima facie case").

Here, the district court properly placed the burden of proof on Infinity, *see e.g.*, SPA24 (recognizing that Crown Cell does "not bear the burden of proof"), repeatedly reminded Infinity of that burden, *see, e.g.*, SPA3-SPA4 (remarking that the district court "explicitly addressed [Infinity's] burden to prove that the [Products] were not authorized" and "inquired whether [Infinity] was planning to seek discovery from Fenda"), and gave Infinity multiple opportunities to come forward with evidence sufficient to meet its prima facie case, *see, e.g.*, SPA2 ("the factual question of whether the goods were actually counterfeit was identified at the onset, and [Infinity] has been given several opportunities to learn the facts regarding these goods").

As discussed *infra* in Parts II.A. and II.B. of the Argument, the district court correctly concluded that Infinity failed to make a showing sufficient to establish that the Products were not authorized (*i.e.*, that use of the Altec Lansing trademarks was without consent), an essential element of all of Infinity's claims.

## B. Infinity's Lack of Authorization Argument Is Not Properly Before this Court.

In its Appellant's Brief, Infinity seeks to dispute whether Fenda and Westview *ever* had authorization to make and sell Altec Lansing products, claiming, for example, that the agreements Infinity's predecessors had with Fenda and Westview

are "irrelevant," "unauthenticated, incomplete, stale, vague and outdated" App. Br. at 11. In the district court, however, Infinity made the strategic decision to repeatedly and consistently claim that the Products were manufactured after its predecessors' relationships with Fenda and Westview allegedly ended (*e.g.*, that Fenda was an "ex-licensee"). *See, e.g.*, SA-59 (asserting that Products were "<u>manufactured when ordered</u> in 2016 and 2017, and not before") (underlining in original); SA-61 (claiming that Crown Cell "used counterfeit marks and continued to use the marks after its supplier's relationship with [Infinity's] predecessor long ended").

Infinity's time of manufacture argument, which it continues to put forward on appeal (*e.g.*, App. Br. at 38), effectively concedes that Fenda and Westview had, at least at one point, authorization to make and sell Altec Lansing products, else Infinity would have no need to claim a later date of manufacture. In other words, if Fenda and Westview never had authorization to make and sell Altec Lansing products in the first place, the timing of Fenda's manufacture of the Products would be irrelevant.

Moreover, Infinity affirmatively acknowledged Fenda's and Westview's authorization in letters and briefing submitted to the district court. *See, e.g.*, SA-5 (acknowledging that Products were manufactured "by a former distributor of 'Altec Lansing®' goods"); SA-63 n.1 (claiming it was "immaterial that the products may, at one point, have been authentic Altec Lansing products"); *id.* (stating as "fact" that

"the Altec Lansing products Defendants advertised were once authentic"); SA-69 (telling district court "[i]t is undisputed that the goods in question were sold by a former licensee of the Altec Lansing® brand").

Further still, Infinity failed to properly dispute this issue in response to Crown Cell's motion for summary judgment. *See* SPA5-SPA6 (finding that Infinity "submitted a wholly deficient Rule 56.1 statement and response" and noting that Infinity's cursory denials may be deemed admissions of fact); SPA25 ("Moreover, [Infinity] failed to properly respond to [Crown Cell's] Rule 56.1 statement by identifying specific evidence to rebut its assertions."); A399-A401 ¶¶ 11, 12, 14-17 (cursorily denying Crown Cell's statements of fact concerning Fenda's and Westview's authorization to make and sell Altec Lansing products).

In granting Crown Cell's motion, the district court directed Infinity not to reargue the district court's decision (SPA31) or "issues which have been decided" (SA-77). When Infinity ignored this directive and improperly attempted to change course and try to dispute Fenda's authorization (SA-80, SA-81), the district court properly refused to condone Infinity's new argument. SPA44-SPA45 ("[Infinity] has tried to reargue the factual record, claiming that Fenda was never given permission to sell Altec Lansing products in the first place . . . . This issue has already been

33

decided, and [Infinity's] attempt to reargue it is not condoned.").[7] *See, e.g., Best Brands Consumer Prods. v. Versace 19.69 Abbigliamento Sportivo S.R.L.*, No. 23-cv-1115, 2024 U.S. App. LEXIS 14251, at *4 (2d Cir. June 12, 2024) (unpublished) ("[A] District Court enjoys broad discretion in determining the appropriate scope of briefing before it"); *Mallek v. Allstate Ins. Co.*, No. 22-cv-86, 2023 U.S. App. LEXIS 12203, at *3 (2d Cir. May 18, 2023) (unpublished) (affirming grant of summary judgment where "[t]he district court rejected [appellant's] new argument, and also concluded that [appellant] waived the argument by failing to raise it during the initial summary judgment briefing").

Infinity's main argument in this appeal, which seeks to dispute that Fenda and Westview had, at least at one point, authorization to make and sell Altec Lansing products, represents an untimely change in litigation strategy. Because this argument was never properly raised in the district court, this Court need not consider it on the merits. *See, e.g., Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115-16 (2d Cir. 2001) (stating it was "inclined to agree" with district court that appellant's "untimely" argument failed on the merits, but noting "we need not reach this issue which, *since it was not properly raised in the district court, is not properly before*

---

[7] Infinity never raised an argument as to Westview's authorization in the district court. SPA46 n.2 (noting that Infinity did "not attempt to reargue" the district court's conclusion regarding Westview's relationship with Infinity's predecessor).

*us*") (emphasis added); *Golden Ins. Co. v. Ingrid House LLC*, No. 21-cv-1337, 2022 U.S. App. LEXIS 16343, at *11 (2d Cir. June 14, 2022) (unpublished) ("While we retain broad discretion to consider issues not timely raised below, the circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to timely raise the arguments below") (citations and quotations omitted); *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 462 F. App'x 26, 29 n.7 (2d Cir. 2012) (unpublished) ("Because the arguments were not properly presented to the District Court, they are not before us now.").

## II. THE COURT SHOULD AFFIRM THE DISTRICT COURT'S SUMMARY JUDGMENT RULINGS.

### A. The District Court Correctly Concluded that Infinity Failed to Present Evidence that the Products Were Not Authorized.

Even considering Infinity's untimely argument, the district court properly determined that, despite numerous opportunities and warnings, Infinity produced no evidence that the Products were not authorized, *i.e.*, that use of the Altec Lansing trademarks was without consent, as required by all Infinity's claims. After initially ordering Infinity to produce documents and agreements concerning Fenda, including "contracts or agreements under which Fenda has manufactured or been authorized to manufacture" Altec Lansing products and "documents concerning any termination or expiration of Fenda's authorization or license" (SA26-SA27), the

35

district court "explicitly addressed [Infinity's] burden to prove that the [Products] were not authorized" during a conference (SPA3) and granted Infinity's request for an additional 90 days of discovery to elicit relevant evidence (SA-49).

The district court then properly placed the burden of proof on Infinity (*see* Part I.A. of the Argument above), determined that "despite the additional time to build a factual record, [Infinity] has failed to establish the basic fact that the goods were counterfeit" (SPA18), and granted summary judgment for Crown Cell on the counterfeiting claim (SPA24). The district court also proceeded to analyze each of Infinity's remaining causes of action and concluded that Infinity's failure to produce evidence that the Products were inauthentic was fatal to those claims as well. (SPA27-SPA31.) After giving Infinity yet another opportunity to present evidence, the district court concluded that "even with a second bite of the apple, [Infinity] has done nothing to disturb any finding -- legal or factual -- that we made in our initial Order" and entered summary judgment for Crown Cell on Infinity's remaining claims. (SPA47-SPA48 (emphasis in original).) This Court should affirm the district court's judgments on this basis alone.

On appeal, Infinity mistakenly claims that the district court "did not give enough weight" to (i) the declaration of its managing member, Mr. Franco; (ii) emails between Crown Cell and Westview and portions of Boyarsky's deposition testimony regarding Crown Cell's purchase of the Products from Westview; and (iii)

36

emails between Westview and Fenda regarding the Products. (App. Br. at 32-48.) Infinity relies on this evidence for its time of manufacture argument. *See, e.g.*, *id.* at 38 (claiming that "[e]mail correspondence from around that time, corroborated by the deposition testimony of Defendant Isser Boyarsky, suggests that the goods were not in stock, but were being manufactured at the time").

The district court expressly considered this evidence and properly determined that "even if Fenda did entirely manufacture the speakers in 2016 and 2017, [Infinity] does not provide any evidence that Fenda was not permitted to do so." (SPA23.) Infinity's complaints regarding the district court's analysis provide no basis for disturbing the district court's conclusion. The district court properly considered this evidence and concluded that even when drawing all reasonable inferences in Infinity's favor, Infinity could not show "whether Fenda was permitted to produce the speakers at that time." (SPA25-SPA26.) *See also* SPA23 (concluding that "the record contains no evidence as to who was permitted to manufacture the goods or, alternatively, that the speakers were no longer authorized to be in production at that time").

Indeed, in its Appellant's Brief, Infinity fails to cite *any* evidence for the bare assertion that Crown Cell "made use of the Altec Lansing trademark to sell its products without the consent of the actual trademark owner." App. Br. at 26 (citing nothing in support). Similarly, Infinity baldly asserts that "Mr. Franco made his

showing that these goods were being sold without a license [and] that he never gave or ratified any consent to any third party to make" the Products. *Id.* at 33. Noticeably absent is any cite to Mr. Franco's declaration on these points.

When Infinity acquired the Altec Lansing trademarks in 2012, it "step[ped] into the shoes" of the previous owners, acquiring not only the rights but "also any burdens and limitations" incumbent on its predecessors such as license agreements and authorizations to make and sell Altec Lansing products. *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 593 (5th Cir. 2003) (finding that trademark assignee was bound by terms of assignor's prior trademark license agreement with distributors). Tellingly, Infinity failed to produce any evidence as to whether or when its predecessor's authorizations were terminated. (SPA24.) If such evidence existed, it was "uniquely within [Infinity's] control." (SPA23.) Infinity's bare assertion that Fenda's conduct was not authorized does not make it so and is insufficient to avoid summary judgment.

The district court specifically addressed Infinity's cited evidence and was correct in finding it insufficient to meet Infinity's burden. (SPA20-SPA23.) The district court also correctly raised "serious concerns" about the admissibility of the emails between Westview and Fenda. (SPA21.) For example, the Fenda employees' statements are hearsay that does not fall into any exception or exclusion. Infinity claims that the emails containing Fenda's statements fall into the business record

exception, but there is no evidence that Fenda sent the emails as part of the normal course of business. (SPA21 n.9.) The emails also fail to qualify as admissions against interest because Fenda is not "unavailable" as required by Federal Rule of Evidence 804 and the emails are not sufficiently against Fenda's interest. (SPA22 n.9.)[8] Mr. Franco's declaration likewise suffers from admissibility issues as it "goes far beyond his own personal knowledge[,] fails to cite other evidence supporting the propositions," and relies on "emails on which Mr. Franco was not included and the deposition of another witness in the case." (SPA6-SPA7.) *See Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999) (upholding district court's rejection of affidavit that "flagrantly disregarded the requirements of Rule 56(e)," was "riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly not made on the affiant's personal knowledge," and "more resembled an adversarial memorandum than a bona fide affidavit").

As a result, even if Infinity's untimely lack of authorization argument is considered, this Court should affirm because Infinity failed to make a showing sufficient to establish that the Products were not authorized (i.e., that use of the Altec Lansing trademarks was without consent), an essential element of all of Infinity's

---

[8] On appeal, Infinity does not challenge the district court's conclusion that Fenda's statements do not fall into other hearsay exceptions or exclusions. (App. Br. at 43.)

claims. *See Crawford v. Franklin Credit Mgmt.*, 758 F.3d 473, 487 (2d Cir. 2014) (affirming summary judgment as to certain claims where "there was at least one element as to which [plaintiff] failed to adduce sufficient evidence of a genuine dispute of material fact to be tried"); *Chandok v. Klessig*, 632 F.3d 803, 818 (2d Cir. 2011) (affirming summary judgment where plaintiff "failed to adduce evidence of [essential element of claim] sufficient to create a genuine issue for trial").

### B. The District Court Correctly Concluded, in the Alternative, that Crown Cell Put Forth Sufficient Evidence to Support Summary Judgment.

As a wholly separate and independent basis for its decisions, the district court took the additional step of reviewing Crown Cell's evidence and correctly determined that such evidence supports summary judgment in Crown Cell's favor on all Infinity's claims. SPA24 (concluding that *"[s]eparate and apart from [Infinity's] failure"* to present evidence that the goods were in fact counterfeit, Crown Cell "presented affirmative evidence that [Infinity's] predecessors had agreements with both Fenda and Westview, revealing that, at least at one point, Fenda and Westview were authorized to make or sell Altec Lansing products") (emphasis added).[9] As discussed above in Part II of the Argument, Infinity's

---

[9] *See also* SA-77 ("Moreover, the Court found that there were agreements between plaintiff's predecessors and affiliates of the manufacturer of the disputed product"); SPA35 (summarizing findings that Crown Cell "'presented affirmative evidence' demonstrating that the speakers in question were supplied and distributed by entities that, 'at least at one point,' were 'authorized to make or sell Altec Lansing

40

untimely challenges to Crown Cell's evidence are not properly before this Court. But even considering Infinity's arguments, the district court correctly determined that Crown Cell was entitled to summary judgment. *See* SPA47 (specifically considering and rejecting Infinity's "eleventh-hour attempts to undermine" the district court's conclusion).

For example, the district court properly considered the MOU and Addendum with Fenda "to supply or produce Altec Lansing goods" and noted "there is no evidence as to whether or when that arrangement was terminated." (SPA24.) Infinity complains that these agreements are "unauthenticated" and somehow "incomplete" (App. Br. at 50-51), based on the repeated, incorrect assertion that Crown Cell, rather than Infinity, produced the agreements during discovery. (*See supra*, Part II.B. of the Statement of the Case.) Infinity also seeks to take issue with the Fenda entity that entered into the agreements (App. Br. at 50-51), but as shown by the signatures reproduced above (*see* Parts I.C. and II.B. of the Statement of the Case) the MOU and Addendum were signed by the same Fenda entity that shipped the Products to Crown Cell. (A104; A109; A164; A165.) *See also* SPA47 (noting that Infinity "does not articulate why its predecessor's agreements . . . are not persuasive evidence that Fenda was an authorized manufacturer"). The district court also properly considered

---

products'") (quoting SPA24); SPA40 ("[T]here was undisputed evidence that the goods were produced and sold by authorized providers").

evidence "that Fenda was listed as a top exporter of Altec Lansing products." (SPA24 (citing A288 ¶17; A113-A118).)

The district court further correctly considered evidence of the Sales Representative Agreement with Westview, "which allowed Westview to solicit orders for Altec Lansing goods," as well as Boyarsky's testimony "that he knew that Westview and Steinberg were at least previously authorized to sell Altec Lansing products." (SPA24-SPA25.) Infinity's attempt to reargue the district court's conclusion regarding Westview for the first time on appeal (*see* SPA46 n.2) should be rejected. But even if considered, Infinity's claim that the Amendment "served to terminate" Westview's rights is misplaced. The Amendment by its terms sought to amend the Sales Representative Agreement appointing Westview "to solicit orders for the Altec Lansing Products," and given that the Amendment is not fully executed, the district court correctly considered the Sales Representative Agreement to have remained in force. (A100.) Moreover, the Amendment goes on to provide that "[Westview] shall continue to represent the Plantronics products on the same terms and conditions that are set forth in" the Sales Representative Agreement, further supporting the district court's conclusion. (*Id.*)[10]

---

[10] As additional evidence of Westview's authorization to deal in Altec Lansing products, when responding to Crown Cell's Rule 56.1 Statement of Facts, Infinity did not dispute that Westview previously sold products bearing the Altec Lansing trademarks to Windsor, Boyarsky's former employer, which Windsor resold online.

Finally, the district court correctly considered Crown Cell's "evidence that the speakers at issue were not the latest model, but older models that had been available since at least 2009," concluding that the "fact that these were older models support [Crown Cell's] argument that the speakers were produced while Fenda or Westview had a license to do so." (SPA25.) Infinity curiously claims that such evidence is "completely irrelevant to dating the manufacture" of the Products, while also claiming that it somehow supports Infinity's time of manufacture argument. (App. Br. at 53-54.) And Infinity's assertions that the Products were "outdated" (App. Br. at 33) and not in an Altec Lansing product line for years (*id.* at 36) further supports the district court's conclusion.

Accordingly, even if Infinity's untimely lack of authorization argument is considered, the district court's consideration of Crown Cell's affirmative evidence and conclusion that Infinity could not establish a genuine issue of material fact as to its claims provides an additional, alternative basis for affirming summary judgment to Crown Cell.

---

(A401 ¶20.) And in its Appellant's Brief, Infinity acknowledges that Boyarsky was "dealing in Altec Lansing® product" while with Windsor. (App. Br. at 13.)

**C.** **Infinity's Remaining Arguments Provide No Reason to Disturb the District Court's Rulings.**

Finally, Infinity's Appellant's Brief includes a series of assertions that are conclusory or undeveloped (or in many instances, both), which also do not warrant reversal. In particular, Infinity's brief is replete throughout with assertions that purport to state matters of fact but include no citation to any supporting evidence and should accordingly be disregarded by the Court. Examples of Infinity's systemic failure to provide record support for its arguments include:

- Crown Cell sold the Products "knowing it had no right or license to do so" (App. Br. at 13; *see also id.* at 23 ("Email correspondence demonstrates . . . that . . . [Crown Cell] ordered Altec Lansing® product knowing full well that neither they nor their distributor or manufacturer were authorized to do so"));

- Emails and testimony "demonstrate that the [Products] were made to order, i.e. manufactured at the direction of [Crown Cell] at the time of the alleged purchase and resale by [Crown Cell] of the subject goods" (*id.* at 13);

- Crown Cell "has made use of the Altec Lansing trademark to sell its products without the consent of the actual trademark holder" (*id.* at 26);

- "Infinity would succeed in establishing consumer confusion based on the celebrity of the trademarks" (*id.*);

44

- Crown Cell's "falsehood damaged [Infinity] because it allowed for non quality controlled product to reach the market, in a distribution channel that was not approved by the brand owner and with admitted outdated packaging, instructions and warranties" (*id.*);

- "Mr. Franco made his showing that these goods were being sold without a license [and] that he never gave or ratified any consent to any third party to make these two items" (*id.* at 33);

- "Clearly, all of Westview's negotiation, purchasing and production is done by email and it is clearly their practice (as it is any other business in the industry) to preserve these discussions, correspondence, negotiations and purchases on their servers" (*id.* at 45);

- Fenda and Westview "undoubtedly knew that Westview had no license, which could subject both Westview and Fenda to liability" (*id.* at 48; *see also id.* at 65 "Westview also had no license and Crown Cell knew or should have known this."));

- "[B]y selling products in the fast-paced ever-changing world of consumer electronics long after their original license term, [Crown Cell] affect[s] [Infinity's] reputation because of the outdated nature of the goods; they deceive consumers who now believe that the owners of the Altec Lansing® brand do not update their product line and are not

innovative, have no quality control, customer service, warranty or return policy" (*id.* at 68-69).[11]

Given the centrality of identifying any genuine issues of material fact to this appeal, the lack of any record support for the foregoing assertions is by itself fatal to Infinity's arguments. Nevertheless, Crown Cell provides the following additional reasons that the Court should reject Infinity's arguments.

Infinity's Cross-Motion for Summary Judgment. Other than passing references, *e.g.*, App. Br. at 10 (claiming the district court "should have granted [Infinity] summary judgment"), Infinity does not challenge the district court's denial of Infinity's cross-motion for summary judgment on all its claims. The district court's well-reasoned ruling should be affirmed. (SPA18-SPA23.) Despite asking the district court to award it $4,000,000 in damages (SA-68), Infinity could not be bothered to submit a proper Rule 56.1 statement, proffering "just fourteen paragraphs to support its motion for summary judgment on five causes of action." (SPA6 (emphasis in original).) Indeed, Infinity has never even introduced certificates of registration for any of the Altec Lansing "brands" it seeks to enforce.

---

[11] In a footnote, Infinity refers to 2018 and 2020 product reviews, which are irrelevant given that Crown Cell sold the Products in 2016 and 2017. *See*, *supra*, Parts I.D. and I.E of the Statement of the Case.

Infinity's State Law Claims. Infinity's brief does not address the district court's dismissal of Infinity's fourth cause of action (under New York General Business Law § 133) or fifth cause of action (for common law trademark infringement and unfair competition). (SPA29-SPA30.) Infinity also does not address the district court's conclusion that that Infinity's third cause of action (under N.Y. Gen. Bus. L. § 360-1) is not viable because the only remedy available is injunctive relief. (SPA29 n.11.) Accordingly, Infinity has abandoned these claims. *Tripathy v. McKoy*, 103 F.4th 106, 111 (2d Cir. 2024) (finding that appellant "abandoned his remaining claims by failing to adequately raise them in his opening brief").

No Direct License. Infinity repeatedly suggests that Crown Cell is liable for at least trademark infringement for failing to have a direct license from Infinity. *See* App. Br. at 9 ("[N]o defendant had a direct license to import and offer for sale Altec Lansing® product"); *id.* at 10 (stating that Infinity "never gave a license to any defendant"); *id.* at 12 (noting that Crown Cell "had no direct license" from Infinity); *id.* at 42 (stating that Crown Cell "had no license"); *id.* at 53 (arguing that prior agreements are "inapplicable" to Crown Cell's sale without a license); *id.* at 65 ("There is no dispute that no Defendant had no [sic] license to sell Altec Lansing® product"). This is a red herring. Under the "first sale doctrine," Infinity's right to control distribution does not extend beyond Fenda's authorized first sale. *Bel Canto*

47

*Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 222 (S.D.N.Y. 2011) ("The Lanham Act does not give mark holders the right to control subsequent, non-authorized resales, as long as the product sold is genuine").

<u>Exhaustion Doctrine</u>. Infinity asserts that the first sale or "exhaustion" doctrine is "of no avail" in this case. (App. Br. at 57-64.) Infinity's entire discussion presupposes that Fenda was an ex-licensee when it manufactured the Products. *See, e.g., id.* at 60-63 (discussing cases and arguing that "former licensee may not invoke the exhaustion doctrine for any goods sold after the termination of the licensing agreement"). As discussed herein (*see* Part II.G.2. of the Statement of the Case), the district court correctly found that Infinity made "no attempt to adduce evidence that Fenda (or Westview for that matter) was an ex-licensee," despite the district court's invitation to put forth "evidence showing that Fenda was an ex-licensee and that the goods were not genuine." (SPA45.) Infinity also, once again, mistakenly seeks to place the burden of proof for Infinity's claims on Crown Cell, contending that "Defendants have not shown that the product at issue was genuine and comparable to historical Altec Lansing® product." (App. Br. at 63.) As addressed below, the district court correctly remarked that Infinity failed to inspect the Products or put forward any product comparison.

Further, Infinity's reliance on the decision in *By Design PLC v. Ben Elias Indus. Corp.*, No. 98-cv-4588, 1998 U.S. Dist. LEXIS 22992 (S.D.N.Y. Oct. 2,

1998) is misplaced. Infinity cites this decision for the proposition that "once a trademark owner denies having given consent, the burden was [sic] placed on the defendant to prove otherwise." (App. Br. at 60.) In that case, however, the trademark owner came forward with "uncontroverted" affidavits showing that it cancelled an order for over 500 garments from a Korean manufacturer and those garments were later sold by the defendant without following the trademark owner's various quality control and inspection procedures. *Id.* at *2-3. Here, by contrast, Infinity has not provided *any* evidence of lack of consent and the suggestion that a trademark holder can avoid summary judgment by simply denying having given consent, in conclusory fashion or in briefing, should be rejected.

Unfair Demand. Infinity claims that the district court's emphasis on Infinity's burden to produce information concerning Fenda was "an unfair demand." (App. Br. at 34.) But the district court correctly noted that "evidence as to who was permitted to manufacture the goods . . . is evidence uniquely within [Infinity's] control." (SPA23.) Moreover, Infinity joined Crown Cell in proposing the initial Scheduling Order entered by the district court, which required Infinity to produce "contracts or agreements under which Fenda has manufactured or been authorized to manufacture" Altec Lansing products and "documents concerning any termination or expiration of Fenda's authorization or license." (SA26-SA27.) In response, Infinity produced the MOU and Addendum with Fenda, showing that it had

documents concerning its predecessors' relationships with Fenda in its possession, custody, or control. (*See, supra*, Part II.B. of the Statement of the Case.) Yet, despite numerous opportunities, Infinity never produced any evidence suggesting that Fenda's authorization had been terminated or expired.[12]

No Inspection of the Products. Infinity seeks to fault the district court for remarking that Infinity "never purchased or inspected the speakers at issue to evaluate if they differed in any way from authentic goods." (App. Br. at 36 (quoting SPA18).) Far from *requiring* Infinity to have inspected the Products, the district court explained that providing a side-by-side comparison is usually the "most effective tool" for a district court to determine whether the goods at issue deviate from authentic goods. (SPA18-SPA19.) These remarks were part of a larger discussion where the district court explained how Infinity failed to "build a factual record," rested "its case entirely on two sets of emails," and never even took the "simple effort" – "routine" in the district court's experience – to purchase an allegedly infringing product. (SPA18-SPA20.) Such discussion was entirely proper given Infinity's burden of proof.

---

[12] Infinity does not dispute the district court's conclusion that Infinity "did not provide any evidence that such authorization was ever withdrawn;" rather, Infinity incorrectly claims that "[t]his misstates the burden of proof in this matter." (App. Br. at 35, 41.)

Overrun Goods. Infinity's brief includes a lengthy diversion into "overrun" goods sold by an ex-licensee and related criminal statutes. (App. Br. 36-38.) Here, however, the district court correctly found that Infinity made "no attempt to adduce evidence that Fenda (or Westview for that matter) was an ex-licensee," despite the district court's invitation to put forth "evidence showing that Fenda was an ex-licensee and that the goods were not genuine." (SPA45.) Accordingly, Infinity's overrun goods discussion is inapposite.

Hearsay Evidence. Infinity argues that the district court "should have ruled" that Fenda's email statements "constitute 'material that would be admissible' at trial." (App. Br. at 54 (emphasis in original).) But Infinity fails to articulate how this would have changed the result. As discussed above, the district court considered Fenda's emails despite having concerns about their admissibility. SPA22 ("[E]ven if the Court were to consider the emails, which it need not, they are not the 'smoking gun' evidence that [Infinity] touts them to be").

More Discovery Needed. Amazingly, Infinity claims it "should have been afforded the opportunity" to conduct more discovery. (App. Br. at 54-57.) Infinity says it should have been able to "subpoena" Allen Steinberg, Westview's principal. (*Id.* at 54.) Westview is a party to the case. Infinity already obtained a declaration from Steinberg (A373) and had ample opportunity to obtain additional discovery from Westview. Infinity also says "even if [Infinity] chose not to undergo the

expense of soliciting testimony from [Fenda] to defeat summary judgment, it well might well do so for trial." (App. Br. at 55.) Infinity's unsuccessful litigation strategy is no basis for a re-do. Infinity's protestations fall particularly flat given that Infinity moved for, and continues to request, summary judgment in its favor on all claims.

Non-Willfulness. Infinity asserts that the district court erred in rejecting its willfulness claim. (Ap. Br. at 64 (citing SPA26).) Infinity relies on allegations that "[t]here is no dispute that no Defendant had no [sic] license to sell Altec Lansing product" and that "Westview also had no license and Crown Cell knew or should have known this." (App. Br. at 65.) For the reasons set forth above, whether Crown Cell had a direct license from Infinity is of no moment given Fenda's authorized first sale. Thus, Infinity's first allegation is irrelevant. Infinity's second allegation is not supported by the record (indeed, Infinity does not cite any evidence in support) and should be disregarded. Westview specifically denied selling infringing products and asserted in 2018 that "at least a portion of the [Products] constituted authorized ALTEC LANSING inventory sales." (A264.) Infinity also misreads this Court's *4 Pillar Dynasty* decision. In that case, the Court affirmed reliance on "[d]efendant's *failure* to stop selling the infringing goods after the action was filed" to find willfulness. *4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202, 210 (2d Cir. 2019) (emphasis added). The Court did not find that "ceasing sale activity supported a finding of willfulness," as Infinity claims. (App. Br. at 66.) Accordingly, the district

court was correct that because Crown Cell "immediately removed the [Products] for sale" after receiving Infinity's cease and desist letter, this rebutted any suggestion that Crown Cell's conduct was willful. (SPA27.) The district court's determination of non-willfulness was accordingly proper and should be affirmed.

Trademark Infringement and Related Claims. Infinity argues that its claims other than counterfeiting should have been allowed to proceed because even if Fenda did have a license to manufacture Altec Lansing products, "the continued use of a mark by an ex-licensee can constitute a trademark infringement." (App. Br. at 66-69.) As previously discussed, the district court correctly concluded that Infinity made "no attempt to adduce evidence that Fenda (or Westview for that matter) was an ex-licensee." (SPA45.)

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's summary judgment for Crown Cell dismissing all of Infinity's causes of action.

Respectfully submitted,

Dated: December 2, 2024

*/s/ Coby S. Nixon*
Coby S. Nixon
BUCHALTER APC
3350 Riverwood Parkway, Ste. 1900
Atlanta, Georgia  30339
(404) 832-7533

*Counsel for Defendants-Appellees Crown Cell, Inc., Herschel Spalter, and Isser Boyarsky*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of Local Rule 32.1(a)(4)(A) because it contains 11,962 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

*/s/ Coby S. Nixon*
Coby S. Nixon

*Counsel for Defendants-Appellees*
*Crown Cell, Inc., Herschel Spalter,*
*and Isser Boyarsky*